BUSINESS AND PROFESSIONAL PEOPLE FOR the PUBLIC INTEREST, Petitioner,

v.

NUCLEAR REGULATORY COMMISSION and the United States of America, Respondents.

No. 85–1441.

United States Court of Appeals, District of Columbia Circuit.

Argued April 24, 1986.

Decided June 27, 1986.

As Amended June 27, 1986.

John R. Hammell, with whom Robert J. Vollen and Alexander Polikoff, Chicago, Ill., were on brief, for petitioner.

Carole F. Kagan, Atty., Nuclear Regulatory Com'n, with whom Richard K. Willard, Asst. Atty. Gen., Dept. of Justice and William H. Briggs, Jr., Sol., Nuclear Regulatory Com'n, Washington, D.C., were on brief, for respondents.

Before BORK and SCALIA, Circuit Judges, and GESELL,* District Judge.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

Business and Professional People for the Public Interest ("BPI"), a not-for-profit corporation, petitions for review of an order entered by the Nuclear Regulatory Commission denying its application for fees and expenses under the Equal Access to Justice Act, 5 U.S.C. § 504 (1982) ("EAJA"). BPI had intervened in an NRC licensing proceeding relating to the Northern Indiana Public Service Company's attempted construction of the Bailly Generating Station. When the utility cancelled the facility in 1982, BPI sought fees and expenses in the amount of $251,853.95.

For the Commission to award funds under the EAJA, there must first be funds appropriated it by Congress. The Commission's 1982 appropriations act, however, stated that:

None of the funds in this Act shall be used to pay the expenses of, or otherwise compensate, parties intervening in regulatory or adjudicatory proceedings funded in this Act.

Energy and Water Development Appropriations Act, Pub.L.No. 97–88, § 502, 95 Stat. 1135, 1148 (1981). The Bailly licensing pro-

* Of the United States District Court for the District of Columbia, sitting by designation pursu-

ant to 28 U.S.C. § 292(a).

ceeding in which BPI intervened lasted several years, and was funded in part by this appropriations act and in part by earlier appropriations acts. The question that arose was whether the 1982 appropriations act barred funds appropriated by that act from being used to make awards to intervenors in proceedings funded in part, but not entirely, under the 1982 Act. Although its application for fees and expenses sought reimbursement with respect to the entire proceeding, *see* Affidavit of Jane M. Whicher at 14, Joint Appendix ("J.A.") at 21, 34, BPI maintains in its briefs before this court that it only seeks funds for that portion of the proceeding funded under earlier appropriations acts. Reply Brief for Petitioner at 3.

The Commission sought guidance from the Comptroller General of the United States. In a decision issued on September 29, 1983, the Comptroller General determined that "funds restricted by section 502 may not be used to satisfy an award in an adversary adjudication regardless of the fact that part of the proceeding was conducted in an earlier 'unrestricted' fiscal year." *In re Availability of Funds for Payment of Intervenor Attorney Fees— Nuclear Regulatory Commission,* File # B–208637 at 6 (Comp.Gen.), J.A. at 66. In reliance on that decision, the Commission issued an order denying BPI's application. *In re Northern Indiana Public Service Co. (Bailly Generating Station, Nuclear 1),* Docket No. 50–367 (May 23, 1985), J.A. at 79.

We affirm the Commission's decision. First, the language of the statute supports that interpretation. It does not bar funds to intervenors only with respect to *those portions of proceedings* funded in the Act, or only in proceedings funded *entirely by* the Act. It prohibits awards to intervenors in proceedings funded in the Act. The Bailly licensing proceeding was funded in the Act. The truth of that statement is not diminished by the fact that the proceeding was also funded in other acts.

Second, the legislative history, while scant, also supports the Commission's interpretation. The 1981 appropriations act was the first one in which this language appeared, and one of the accompanying committee reports stated flatly that "[n]o funds are recommended for a Commission intervenor program. Section 502 of the bill prohibits the use of appropriations for an intervenor funding program." H.R.Rep. No. 1093, 96th Cong., 2d Sess. 148 (1980).

This intent would rarely, if ever, be effectuated under BPI's interpretation of the statute. NRC proceedings are generally too long to be wholly contained within a single appropriations year. If BPI were correct, the 1982 appropriations bill would make funding available for intervenors in any multi-year proceeding that terminated in the 1982 appropriations year. Moreover, even if Congress reenacts the same language in all future appropriations bills, intervenors would be able to recover fees and expenses for proceedings that are begun, conducted, and terminated during years in which that bar was in effect. For example, if a proceeding were initiated in 1982 and terminated in 1986, and the appropriations acts for the years 1982 through 1986 all prohibited funds from their respective appropriations from being provided to intervenors in proceedings funded in those appropriations, intervenors would nevertheless be able to apply in 1986 for compensation for that portion of the proceeding that was conducted in 1982 through 1985. The funds appropriated in 1986 would not be barred with respect to portions of the proceeding held earlier, and the prohibitions in those earlier acts would not apply to funds made available by the 1986 appropriations act. In fact, BPI's petition presents us with that situation, because by eliminating only that portion of the proceeding funded in the 1982 Act, *see* Reply Brief for Petitioner at 3, BPI would recover fees and expenses for that portion of the proceeding funded by the 1981 Act, which also contained the prohibition embodied in section 502.

BPI argues that the Commission's interpretation effectively reads out of the statute the words "funded in this Act," and that such an interpretation is suspect because it fails to give effect to every word in the statute. We do not agree, however, that under the Commission's interpretation those words have no meaning. If funds had been obligated in an earlier appropriations year—because the proceeding in question had terminated in that year—but had not yet been *paid* to the intervenors, section 502 would not prohibit the awarding of 1982 appropriated funds in satisfaction of that obligation. Congress might therefore have wished to preclude all future such obligations without denying funds already promised by the Commission. BPI asserts that it is aware of no statutory authority prior to enactment of the EAJA under which such awards could have been obligated, but the Comptroller General ruled in 1980 (in response to an inquiry from the Commission) that the Commission possessed that authority under section 189 of the Atomic Energy Act, 42 U.S.C. § 2239 (1982). *In re Financial Assistance to Intervenors in Proceedings of Nuclear Regulatory Commission*, 59 Comp.Gen. 228 (1980). The words "funded in this Act" thus ensure that the denial of funds to intervenors is to have only prospective application, *i.e.*, only to those intervenors whose proceedings had continued into 1982 and who thus had not yet received approval from the Commission of an application for fees or expenses.

We find therefore that the Comptroller General and the Commission have given the Act what we believe to be its most plausible interpretation. If further reason for affirmance were necessary, we would note that their interpretation need not be the most plausible but only a reasonable one to withstand challenge on appeal. *Chevron U.S.A. Inc. v. Natural Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Accordingly, the petition is

*Denied.*